UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EVERETT TAYLOR,

    Petitioner,

v.                                    Case No. 8:21-cv-2326-WFJ-JSS

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

    Before the Court is Everett Taylor's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Civ. Dkts. 1, 2, 8).[1] The United States of America ("Respondent") has responded in opposition (Civ. Dkt. 17), and Petitioner has replied (Civ. Dkts. 20 & 21). Upon careful review, the Court denies Petitioner's Motion.

## BACKGROUND

    On October 16, 2013, a federal grand jury returned a twenty-six-count indictment against Petitioner for various crimes related to filing fraudulent tax returns. Cr. Dkt. 1. Petitioner opted to enter into a plea agreement instead of going

---

[1] In this civil case, citations to the civil docket will be denoted as "Civ. Dkt. [document number]." Citations to Petitioner's prior criminal case, 8:13-cr-496-WFJ-JSS-1, will be denoted as "Cr. Dkt. [document number]."

to trial and pled guilty to theft of government property in violation of 18 U.S.C. § 641 (Count Seventeen) as well as aggravated identity theft in violation of 18 U.S.C. § 1028A (Count Twenty-Six). Cr. Dkt. 114 at 1. Petitioner also agreed to waive the right to appeal his sentence. *Id.* at 12–13.

On July 3, 2017, the presiding court held a change-of-plea hearing. Cr. Dkt. 196. Petitioner affirmed his competency and stated his satisfaction with his attorney at this time. *Id.* at 6, 9–10. After reviewing Petitioner's entire plea agreement and ascertaining Petitioner's understanding of each provision, the court was satisfied that Petitioner knowingly and voluntarily entered into the agreement. *Id.* at 32. The court therefore accepted Petitioner's plea and adjudicated him guilty. Cr. Dkt. 116.

Prior to sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR"). Cr. Dkt. S-132. Although the base offense level for Count Seventeen was 6, Petitioner received a 14-level enhancement for loss exceeding $550,000 (U.S.S.G. § 2B1.1(b)(1)(H)), a 2-level enhancement for offense conduct involving 10 or more victims (U.S.S.G. § 2B1.1(b)(2)(A)(i)), a 2-level enhancement for obstruction of justice (U.S.S.G. § 3C1.1), and a 2-level reduction for acceptance of responsibility (USSG § 3E1.1(a)). *Id.* at 9–10. This resulted in a total offense level of 22. *Id.* at 10. Given Petitioner's criminal history category of III, Petitioner's advisory guideline range spanned from 51 to 63 months' imprisonment for Count

Seventeen followed by a consecutive 24-month term for Count Twenty-Six. *Id.* at 10, 22, 34.

Both Petitioner and Respondent objected to the PSR's total offense level calculation. Petitioner argued that the total offense level was erroneously high for three reasons: 1) a 2-level § 2B1.1(b)(1)(H) enhancement for loss exceeding $550,000 is inappropriate where the actual loss was approximately $300,000; 2) a 2-level § 2B1.1(b)(2)(A)(i) enhancement for offense conduct involving more than 10 victims is inappropriate where the only victim was the IRS; and 3) an additional 1-level § 3E1.1(a) and (b) reduction for acceptance of responsibility is appropriate because the Petitioner accepted his plea agreement within a timely fashion. *Id.* at 41–42. Respondent argued that the total offence-level was erroneously low for two reasons: 1) a 2-level § 3E1.1(a) reduction for acceptance of responsibility is inappropriate where Petitioner obstructed justice by absconding from pretrial supervision; and 2) an additional 2-level § 2B1.1(b)(11)(B)(i) enhancement is appropriate because the offense conduct involved production of an unauthorized access device or counterfeit access device. *Id.* at 38–40.[2]

The presiding court heard Respondent and Petitioner's objections during Petitioner's initial sentencing hearing. Cr. Dkt. 167. The court sustained both of

---

[2] In addition to Petitioner's aforementioned objections, Petitioner's counsel filed a sentencing memorandum which requested a minor role reduction (U.S.S.G. § 3B1.2) and a downward variance based on various factors. Cr. Dkt. 135 at 2–6.

3

Respondent's objections and overruled each of Petitioner's, resulting in a total offense level of 26 for Count Seventeen. *Id.* at 16–18. This raised the advisory guidelines to a range of 78 to 97 months' imprisonment for Count Seventeen with a consecutive 24-month term for Count Twenty-Six. Cr. Dkt. 170 at 6. The court ultimately sentenced Petitioner to 102 months' imprisonment (78 months as to Count Seventeen and a consecutive 24 months as to Count Twenty-Six). Cr. Dkt. 145.

Notwithstanding Petitioner's sentence appeal waiver, Petitioner timely appealed his sentence to the Eleventh Circuit Court of Appeals. Petitioner argued that Respondent breached an implicit promise in its plea agreement with Petitioner by objecting to the offense level reduction for acceptance of responsibility and by failing to object to the offense level enhancement for obstruction of justice. Cr. Dkt. 199 at 4. Petitioner also raised various challenges to his sentence. *Id.*

The Eleventh Circuit afforded Petitioner no relief. Upon reviewing the record, the Eleventh Circuit found that "there is no substantial question as to whether [Respondent] breached [Petitioner's] plea agreement" and that Petitioner's sentence appeal waiver is valid and enforceable. *Id.* at 5–7. The Eleventh Circuit therefore granted Respondent's motion for summary disposition with respect to Petitioner's breach-of-plea challenge as well as Respondent's motion to dismiss Petitioner's challenges to his sentence pursuant to the appeal waiver in his plea agreement. *Id.* at 7.

On October 10, 2021, Petitioner timely filed the instant § 2255 Motion with an accompanying legal memorandum. Civ. Dkts. 1 & 2. Petitioner then filed an amended motion on December 20, 2021. Civ. Dkt. 8. Collectively, Petitioner asserts four claims for ineffective assistance of counsel: 1) trial counsel failed to know the law and properly object to the application of § 2B1.1(b)(11)(B)(i); 2) appellate counsel failed to properly address "the issue of contractual waiver" in Petitioner's appellate brief, resulting in the Eleventh Circuit not considering the merits of Petitioner's appeal; 3) trial counsel failed to know the law and properly challenge financial loss related to Petitioner's § 2B1.1(b)(1)(H) enhancement; and 4) trial counsel failed to know the law and properly challenge the number of victims related to Petitioner's § 2B1.1(b)(2)(A) enhancement. Civ. Dkts. 1, 2, 8.

## STANDARD OF REVIEW

On collateral review, the petitioner "has the burden of proof and persuasion on all the elements of his claim." *In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016). This is "a significantly higher hurdle than would exist on direct appeal," *United States v. Frady*, 456 U.S. 152, 164–66 (1982); for, "[w]hen the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence" at issue. *Moore*, 830 F.3d at 1272 (citations omitted). "[I]f the Court cannot tell one way or the other" whether the petitioner's claim is valid,

5

the petitioner has "failed to carry his burden of showing all that is necessary to warrant § 2255 relief." *Id.* at 1273.

## DISCUSSION

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A petitioner claiming ineffective assistance of counsel carries the burden of establishing both prongs. *Strickland*, 466 U.S. at 687.

To establish deficient assistance under *Strickland*, a petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. The test is not "what the best lawyers" or "what most good lawyers would have done." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Rather, the question is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Id.*

To establish resulting prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

As mentioned above, Petitioner asserts four grounds for ineffective assistance of counsel. The Court will address each before turning to consider entitlement to an evidentiary hearing and appealability.

**I.   Ground One**

Petitioner's first ground for ineffective assistance of counsel focuses on his trial counsel's alleged failure to understand § 2B1.1(b)(11)(B)(i) and to object to its application at Petitioner's sentencing. Civ. Dkt. 1 at 4; Civ. Dkt. 2 at 1–4; Civ. Dkt. 21 at 1–2. Petitioner essentially argues that § 2B1.1(b)(11)(B)(i)'s enhancement was erroneously applied to him and that his trial counsel was ineffective "for failing to properly oppose" it. Civ. Dkt. 21 at 1–2. The Court disagrees.

Section 2B1.1(b)(11)(B)(i) instructs a sentencing court to increase a defendant's offense level where the defendant's offense involved the production or trafficking of any "unauthorized access device or counterfeit access device." "The term 'access device'" includes "any . . . personal identification number . . . that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)[.]" 18 U.S.C. § 1029(e)(1). "The term 'unauthorized access device' means any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud[.]" *Id.* § 1029(e)(3). And the term "'production' includes

7

manufacture, design, alteration, authentication, duplication, or assembly." U.S.S.G § 2B1.1, cmt. n.10(A).

Given this, § 2B1.1(b)(11)(B)(i)'s enhancement was properly applied to Petitioner. Petitioner knowingly and voluntarily stipulated to offense conduct that involved filing fraudulent tax returns in the names of deceased individuals. Civ. Dkt. 114 at 15–17; Civ. Dkt. 196 at 28. This necessarily required Petitioner to duplicate deceased individual's Social Security numbers, which constitutes production of unauthorized access devices. *See United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (finding that "[t]he capture, storage, and transmittal of [usernames and passwords] was at least duplication or assembly" under § 2B1.1(b)(11)(B)). Further, contrary to Petitioner's assertions, "imposition of the two-level enhancement pursuant to § 2B1.1(b)(11)(B)(i) is not prohibited in 18 U.S.C. § 1028A cases, so long as the enhancement is premised on the defendant's 'production' of an unauthorized access device and the party seeking the enhancement sufficiently shows that the defendant engaged in such conduct." *United States v. Taylor*, 818 F.3d 671, 676 (11th Cir. 2016) (citations omitted). Respondent met this burden through Petitioner's factual stipulations. *See United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999) ("The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement."). Petitioner therefore would have suffered no prejudice

8

even if his trial counsel had failed to object to the § 2B1.1(b)(11)(B)(i) enhancement Respondent advocated for.

All the same, Petitioner's trial counsel did object. Trial counsel specifically argued at sentencing that Petitioner's offense conduct did not involve "production of what is considered to be deemed an access device." Civ. Dkt. 167 at 9. While Petitioner's trial counsel did not object on the specific grounds Petitioner now puts forth, this alone cannot overcome the "strong presumption" that trial counsel "rendered adequate assistance." *Strickland*, 466 U.S. 668, 690. Nor can it independently establish resulting prejudice where Petitioner's position is on the wrong side of the law.

There is simply no doubt that "some reasonable lawyer . . . could have acted, in the circumstances, as [Petitioner's trial counsel] acted at [Petitioner's sentencing]," *White*, 972 F.2d at 1220–21, or that Petitioner would have received a § 2B1.1(b)(11)(B)(i) enhancement even if Petitioner's trial counsel had taken a different approach. Petitioner is entitled to no relief on Ground One.

## II.   Ground Two

Petitioner's second ground for ineffective assistance of counsel focuses on his appellate counsel's alleged failure to "address the issue of contractual waiver." Civ. Dkt. 2 at 5. Petitioner appears to claim that, in failing to address this issue, his

appellate counsel failed to properly challenge the enforceability of Petitioner's appeal waiver and plea agreement generally. Civ. Dkt. 1 at 5.

As an initial matter, it is not entirely clear what Petitioner means by "the issue of contractual waiver." Petitioner states that "[appellate counsel's appeal] was denied on a procedural failure therein making all arguments raised on appeal moot and denying [Petitioner] his constitutional right to effective assistance and waiving his right to appeal, and all issues therein." *Id.* Petitioner then goes on to state that:

> The Appellate Brief was excellent. And yet never considered by the Court of Appeals. It had a fundamental flaw when it failed to properly address the issue of contractual waiver. The plea agreement is a contract[,] but the interpretation of that contract is the sentence. The contract allows for that interpretation. But said interpretation cannot be a plain error. The misinterpretation of the law is a plain error. The Defendant does not waive a misinterpretation of the law.

Civ. Dkt. 2 at 5.

Construing Petitioner claim liberally,[3] Petitioner could be using "the issue of contractual waiver" to refer to one of two things. First, Petitioner might be using "the issue of contractual waiver" to refer to some act or omission *by Respondent* that would render his sentencing waiver invalid, unenforceable, or inapplicable. Second, Petitioner might be using "the issue of contractual waiver" to refer to some act or

---

[3] "Pro se filings, including those submitted by [the petitioner] in the present case, are entitled to liberal construction." *Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). A petitioner nevertheless "must present a claim in clear and simple language such that the district court may not misunderstand it." *Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013) (citation omitted).

10

omission *by the presiding court* that would render his sentencing waiver invalid, unenforceable, or inapplicable. Either way, petitioner is entitled to no relief.

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Indeed, "[a] brief that raises every colorable issue runs the risk of burying good arguments[.]" *Id.* at 753. And "[n]othing in the Constitution" imposes on "counsel a duty to raise every 'colorable' claim suggested by a client." *Id.* at 754.

That said, the performance of Petitioner's appellate counsel did not fall below an objective standard of reasonableness in relation to addressing any "contractual waiver" issue caused by Respondent. A breach by Respondent *is* an act or omission that would render Petitioner's plea agreement invalid or unenforceable. It therefore makes little sense to claim that appellate counsel failed to address "the issue of contractual waiver" (in relation to Respondent) where appellate counsel specifically addressed Respondent's alleged breaches in Petitioner's appellate brief. Cr. Dkt. 199 at 5. Moreover, the decision of Petitioner's appellate counsel to focus on breach as a form of invalidation—instead of "contractual waiver" generally—was not an unreasonable exercise of discretion. Under the circumstances, breach was the most viable legal ground from which to launch an assault on the enforceability or

11

applicability of Petitioner's sentence appeal waiver and plea agreement generally. The ultimate failure of appellate counsel's approach does not change this fact.

The same is true if the Court opts to interpret Petitioner's claim as referencing a "contractual waiver" issue caused by the presiding court. As the presiding court explained to Petitioner at his change-of-plea hearing, "the Court is not a party to [Petitioner's] plea agreement and the Court is not bound by [it]." Cr. Dkt. 196 at 18. The presiding court further explained to Petitioner that "you're also agreeing here that you're expressly waiving your right to appeal your sentence on any ground including the ground that the Court made a mistake in calculating your applicable guidelines range using the United States Sentencing Guidelines." *Id.* at 19. It follows that there can be no "contractual waiver" (as Petitioner uses the term) by the presiding court. The presiding court is not a party to Petitioner's plea agreement. It was not unreasonable for Petitioner's appellate counsel to ignore this completely meritless claim.

Equally fatal to Petitioner's ineffective assistance of appellate counsel claim is Petitioner's inability to demonstrate resulting prejudice. The Eleventh Circuit has "consistently enforced knowing and voluntary appeal waivers according to their terms." *United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases). The Eleventh Circuit will find that an appeal waiver was entered into knowingly and voluntarily where "(1) the district court specifically questioned the

defendant concerning the sentence appeal waiver during the [Fed. R. Crim P. 11] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993). Here, the presiding magistrate judge specifically questioned Petitioner concerning his sentence appeal waiver before finding that Petitioner was agreeing to it knowingly and voluntarily. Cr. Dkt. 196 at 19–21. The Eleventh Circuit relied on this record to find the same on direct appeal. Cr. Dkt. 199 at 7. Accordingly, no challenge to "contractual waiver" would have altered the outcome of Petitioner's appeal. Petitioner knowingly and voluntarily entered into his sentence appeal waiver and Respondent never breached it. *Id.* There is nothing appellate counsel could have done to change this. Petitioner is entitled to no relief.

### III.    Ground Three

Petitioner's third ground for ineffective assistance of counsel focuses on his trial counsel's alleged failure to understand § 2B1.1(b)(1)(H) and to hold Respondent to its burden of proof concerning its application. Civ. Dkt. 8 at 1. Petitioner maintains that these failures resulted in an improper § 2B1.1(b)(1)(H) enhancement, as Respondent failed to meet its burden of demonstrating financial loss exceeding $550,000. Civ. Dkt. 21 at 2. The Court disagrees.

Section 2B1.1(b)(1)(H) instructs a sentencing court to increase a defendant's offense level by 14 points where financial loss exceeded $550,000. Financial loss is

based on "the greater of the actual loss or intended loss." § 2B1.1, cmt. n.3(A)(i), (ii), (iv). And a "district court is permitted to base its loss determination on factual findings derived from, 'among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing.'" *United States v. Bradley*, 644 F.3d 1213, 1290 (11th Cir. 2011) (quoting *United States v. Polar,* 369 F.3d 1248, 1255 (11th Cir. 2004)).

It follows that there was no improper § 2B1.1(b)(1)(H) enhancement here. Petitioner repeatedly stipulated to an intended loss of $575,884.24. Cr. Dkt. 114 at 17; Cr. Dkt. 196 at 28. The presiding court relied on these stipulations, which Respondent reiterated at Petitioner's sentencing, to find loss exceeding $550,000. Cr. Dkt. 167 at 11, 17. Petitioner's § 2B1.1(b)(1)(H) enhancement was therefore appropriate, as a preponderance of the evidence (Petitioner's own stipulations) demonstrated the requisite loss for the enhancement he received. *See Askew*, 193 F.3d at 1183 (11th Cir. 1999) ("The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement."). This ultimately means that Petitioner could not demonstrate prejudice even if his trial counsel's performance fell below an objective level of reasonableness.

Notwithstanding, trial counsel's performance was reasonable. Considering the clear applicability of § 2B1.1(b)(1)(H), Petitioner's trial counsel argued that

14

Petitioner should only be held responsible for the direct loss amount that Petitioner stipulated to—$304,411. Cr. Dkt. 167 at 10. This approach to overcoming § 2B1.1(b)(1)(H) was a sound exercise of discretion given the limited grounds Petitioner's trial counsel had to advocate from. Indeed, constrained by the law and her own client's stipulations, a factual challenge would most likely have been fruitless. The Court cannot second guess trial counsel's approach where many reasonable attorneys would have taken the same.

For these reasons, Petitioner cannot establish either *Strickland* prong on Ground Three. He is therefore entitled to no relief. *See Maharaj*, 432 F.3d at 1319.

## IV. Ground Four

Petitioner's final ineffective assistance claim challenges his trial counsel's alleged failure "to put the government to its burden" in seeking a 2-level § 2B1.1(b)(2)(A)(i) enhancement. Civ. Dkt. 8 at 1. Petitioner contends that there were no facts to establish by a preponderance of the evidence that his offense conduct involved 10 or more victims, and that trial counsel's failure to challenge this lack of evidence resulted in an improper § 2B1.1(b)(2)(A)(i) enhancement. This claim is without merit.

Section 2B1.1(b)(2)(A)(i) provides a 2-level enhancement for economic offenses that involve 10 or more victims. "In cases involving means of identification, such as a Social Security number, 'victim' . . . includes 'any individual whose means

15

of identification was used unlawfully or without authority.'" *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (citation omitted). Victims, moreover, are not limited to those persons still living. *Id.* at 886 (finding that the applicable statute "does not distinguish between living and deceased persons").

Given this, there is no factual support for Petitioner's position concerning a lack of evidence relating to the number of victims in his case. Petitioner repeatedly stipulated that the fraudulent tax returns he received "related to the filings of tax returns using, unlawfully or without authority, the means of identification of approximately twenty individuals." Cr. Dkt. 114 at 17; Cr. Dkt. 196 at 28. Petitioner also knew that these individuals were real persons (albeit deceased) "because only real people have assigned social security numbers and the IRS only pays refunds to real people." *Id.* The presiding court relied on these stipulations at sentencing, as they were reiterated by Respondent and also contained in the PSR. Cr. Dkt. 167 at 12; Cr. Dkt. S-132 at 8. A preponderance of the evidence therefore demonstrated the requisite number of victims for a 2-level § 2B1.1(b)(2)(A)(i) enhancement.

It is also worth noting that trial counsel's approach to avoiding § 2B1.1(b)(2)(A)(i)'s clear applicability was not unreasonable. Petitioner's trial counsel argued that, because Petitioner only pled guilty to two counts, the only cognizable victim should be the IRS. Cr. Dkt. 167 at 11. It is unsurprising that the presiding court disagreed considering Respondent's reliance on *Philidor* in rebuttal.

16

*Id.* at 12. Regardless, as suggested above, an argument can fail to win the day for reasons entirely unrelated to an advocate's performance. The Court has no doubt that Petitioner's trial counsel's performance is unrelated to the § 2B1.1(b)(2)(A)(i) enhancement Petitioner ultimately received.

Where there is no deficient performance nor prejudice, there is no ineffective assistance of counsel. Petitioner has failed to demonstrate either in relation to this claim. As such, it fails to afford him any relief. *See Maharaj*, 432 F.3d at 1319.

### V.     Evidentiary Hearing

In light of the forgoing discussion, Petitioner is not entitled to an evidentiary hearing. "A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (internal quotations and citations omitted). Hence, to demonstrate entitlement to an evidentiary hearing on an ineffective assistance of counsel claim, a petitioner must allege "facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance." *Hernandez v. United States*, 778 F.3d 1230, 1232–33 (11th Cir. 2015). "[A] district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous[.]" *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (citation omitted).

Here, Petitioner's claims are patently frivolous and largely contradicted by the record. It is abundantly clear that Petitioner is not entitled to relief. His attorneys' performances were neither deficient nor prejudicial. As a result, summary dismissal is appropriate. *See Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (finding that "a district court faced with a § 2255 motion may make an order for its summary dismissal [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief").

## VI. Certificate of Appealability

Petitioner is similarly not entitled to a certificate of appealability ("COA"). A petitioner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." Petitioner has made no such showing. Petitioner is therefore entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence (Civ. Dkt. 1, 2, 8) is **DENIED**.

18

(2) A certificate of appealability and leave to appeal *in forma pauperis* is

**DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on March 29, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record